UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 22-mj-22 |
| : | |
| ILYA LICHTENSTEIN, and : | |
| : | |
| HEATHER MORGAN, : | |
| : | |
| Defendants. : | |
| : | |

MOTION FOR EMERGENCY STAY AND
FOR REVIEW OF RELEASE ORDER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court (1) to stay the defendants' release pending trial; and (2) to review the decision by the U.S. Magistrate Judge for the Southern District of New York denying the government's motion for pretrial detention. In support whereof, the government states the following:

BACKGROUND

A. Procedural Posture

The defendants, Ilya Lichtenstein and Heather Morgan (collectively, the "Defendants") were arrested on February 8, 2022 on a criminal complaint and arrest warrant issued by Magistrate Judge Meriweather on February 7, 2022. The complaint charges the defendants with Money Laundering Conspiracy, in violation of 18 U.S.C. § 1956(h), and Conspiracy To Defraud the United States, in violation of 18 U.S.C. § 371. The defendants were arrested at their residence in New York, New York.

A residential search warrant had been executed on January 5, 2022. During execution of the search warrant, Morgan tried to lock her cellular phone to prevent law enforcement

examination. The Defendants retained counsel and engaged in preliminary discussions with the government, although the full nature and scope of the government's investigation was not disclosed at that time. Defense counsel proffered information that Morgan was scheduled to undergo a surgical procedure on January 31, 2022.

The defendants were presented for their Initial Appearance pursuant to Fed. R. Crim. P. 5 on February 7, 2022 in the Southern District of New York, before Magistrate Judge Debra Freeman. Detention arguments were heard. Among other things, the defense represented that Morgan had undergone a surgical procedure on January 31, 2022, and that she was scheduled to have "oral surgery" tomorrow, February 9, 2022. At the conclusion of the hearing, Magistrate Judge Freeman ordered both defendants released on bond subject to certain conditions. For Lichtenstein, he was required to post a $5 million bond, with 5 co-signers, his parent's home in Chicago must be posted as security, home inspection by Pretrial Services was required prior to home incarceration with electronic monitoring, and restriction imposed on the use of "smart phones." Morgan was released on bond subject to the same conditions, except she is only required to post a $3 million bond. In addition, both defendants were required to surrender passports and other travel documents, and were restricted from some (but not all) financial transactions, including restrictions on any cryptocurrency transactions.

Counsel for the government requested a courtesy 24-hour stay of Magistrate Judge Freeman's release decision to facilitate an appeal pursuant to 18 U.S.C. § 3145. Magistrate Judge Freeman declined to grant a stay. She stated that a stay would be unnecessary due to the time it would take for the Defendants to fulfill the conditions prior to release.

During the Initial Appearance, Magistrate Judge Freeman also placed on the record that, prior to the hearing, she received a call in chambers and answered the phone. Defense counsel,

Mr. Anirudh Bansal, spoke to the Magistrate Judge *ex parte* allegedly to ask questions about how to bring electronic devices into the courtroom, and that during the course of the call he expressed his "surprise" to the Magistrate that his clients had been arrested. Defense counsel had not previously disclosed to the government that he had carried on this *ex parte* communication with chambers.

### B. Statement of Facts

As summarized by the sworn agent affidavit in support of the criminal complaint in this case (the "Affidavit" or "Aff."), which is incorporated by reference herein, the defendants were involved in receiving and laundering the proceeds of a hack of a virtual currency exchange (the "Victim VCE") in 2016. In August 2016, the Victim VCE was hacked, and the hacker transferred approximately 119,754 Bitcoin (BTC) to an outside wallet ("Wallet 1CGA4s"). At the time of the breach, the stolen 119,754 BTC was valued at approximately $71 million. Due to the increase in the value of BTC since the breach, the stolen funds are valued at over $4.5 billion as of February 2022.

On January 31, 2022, law enforcement discovered the access credentials for Wallet 1CGA4s —still containing the majority of the stolen funds—in an encrypted file in Lichtenstein's cloud storage account. Between January 31, 2022 and February 1, 2022, the government seized the remaining balance of 94,636 in stolen BTC from Wallet 1CGA4s, valued at more than $3.629 billion.

The investigation also showed that Lichtenstein and his wife, Morgan, engaged in extraordinarily complex laundering of a portion of the stolen funds stored in Wallet 1CGA4s. Specifically, beginning in or around January 2017, a portion of the stolen BTC moved out of Wallet 1CGA4s in a series of small, complex transactions across multiple accounts and platforms. Stolen

funds were traced through accounts at the darknet market AlphaBay, to seven interconnected false-name accounts at a U.S.-based virtual currency exchange ("VCE 1") and to other virtual currency exchanges, to various unhosted BTC wallets, and finally to accounts owned by the Defendants under their true names at six other virtual currency exchanges. The Defendants utilized money laundering techniques including (1) using accounts set up with fictitious identities; (2) moving the stolen funds in a series of small amounts, totaling thousands of transactions, as opposed to moving the funds all at once or in larger chunks; (3) utilizing computer programs to automate transactions; (4) layering the stolen funds by depositing them into accounts at a variety of virtual currency exchanges and darknet markets and then withdrawing the funds, which obfuscates the trail of the transaction history by breaking up the fund flow; (5) converting the BTC to other forms of virtual currency, including anonymity-enhanced virtual currency, in a practice known as "chain hopping"; and (6) using U.S.-based business accounts to legitimize activity.

Throughout the course of this scheme, Lichtenstein and Morgan repeatedly provided false information to and deceived virtual currency exchanges and other financial institutions regarding the source of their funds and the nature of their transactions. One purpose of these deceptions was to frustrate the virtual currency exchanges' due diligence efforts and thereby prevent the transmission of Suspicious Activity Reports mandated under the Bank Secrecy Act to the Financial Crimes Enforcement Network ("FinCEN") and the U.S. Department of Treasury in Washington, D.C.

Law enforcement also discovered that Lichtenstein's cloud storage account contained an account spreadsheet detailing the log-in information and status of accounts at numerous virtual currency exchanges used in the scheme, including a notation of which accounts had been frozen or emptied. It also contained a folder names "personas," which contained biographical information

and identification documents for numerous individuals, and a text file named "passport ideas" that included links to different darknet vendor accounts that appeared to be offering passports or identification cards for sale.

Lichtenstein is a dual Russian and U.S. citizen who has an active Russian passport; law enforcement seized Lichtenstein's U.S. and Russian passports during the January 5, 2022 search warrant. Lichtenstein renewed his Russian passport in 2019. Both Defendants traveled frequently prior to the COVID-19 pandemic, and travel records indicate they had been to Ukraine as recently as September 2019. Morgan lived in Hong Kong and Egypt between 2011 and 2013. Lichtenstein is self-employed as a self-styled tech entrepreneur. Morgan owns a company, Salesfolk, that is incorporated in Hong Kong and was used in furtherance of the laundering scheme, and she publishes freelance business articles in Forbes and Inc. online publications.

Although law enforcement has seized the majority of the stolen funds, there are at least 24 virtual currency addresses linked to the hack (and believed to be in the Defendants' control) for which law enforcement does not possess the private keys (*i.e.*, law enforcement was not able to find the private keys in the Defendants' online accounts for which a warrant was granted). Those 24 addresses contain approximately 7,506 BTC, which is currently valued at over $328 million.

## ARGUMENT

Title 18, U.S.C. § 3145(a) states:

**(a) Review of a release order** – If a person is ordered released by a magistrate, …

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release
> . . .

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pretrial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. *See United States v. Sheffield*, 799 F. Supp. 2d 18, 19 (D.D.C. 2011). In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.

Here, the Defendants are sophisticated cyber criminals and money launderers who present a serious risk of flight and should be detained pending trial pursuant to 18 U.S.C. § 3142(f)(2)(A). They had possession and control over more than $3.6 billion in stolen BTC from the 2016 hack of the Victim VCE. They engaged in an extraordinarily sophisticated laundering scheme to disguise millions of dollars' more from the hoard of stolen BTC. Lichtenstein is a dual Russian national, both Defendants have traveled extensively and have foreign ties, and evidence uncovered in the investigation indicates preparation to obtain false passports. Meanwhile, law enforcement estimates that at least $328 million in cryptocurrency linked to the hack remains unsecured. Given the substantial evidence against the Defendants, the scale and sophistication of their laundering and deception efforts, their foreign ties and access to funds, and the substantial criminal penalties they are exposed to, there is no condition or combination of conditions short of pretrial detention that would reasonably assure their appearance for trial.

The government respectfully submits that an immediate stay of the Magistrate Judge's release decision is necessary to facilitate review of the detention decision by this Court. The

government intends to provide a more detailed submission and evidentiary proffer regarding the Defendants' serious risk of flight.

WHEREFORE, for the foregoing reasons and for any other such reasons as may appear to the Court, the government respectfully requests that the Court grant this motion and enter the attached proposed order to stay the release order entered by Magistrate Judge Freeman of the Southern District of New York on February 7, 2022 pending review of the detention decision by this Court.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

BY: */s/ Christopher B. Brown*
Christopher B. Brown, D.C. Bar No. 1008763
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-7153
Christopher.Brown6@usdoj.gov

*/s/ Jessica Peck*
Jessica Peck, N.Y. Bar Number 5188248
C. Alden Pelker, Maryland Bar
Trial Attorneys, U.S. Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 353-9455 (Peck)
(202) 616-5007 (Pelker)
Jessica.Peck@usdoj.gov
Catherine.Pelker@usdoj.gov